UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOE HAND PROMOTIONS, INC.,

              Plaintiff,

    - vs -                       CASE NO.: 4:21-cv-00051

RUBEN LUA, *et al.,*

              Defendant.

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

1

## TABLE OF CONTENTS

A.   NATURE AND STAGE OF THE PROCEEDING ...................................................... 5

B.   INTRODUCTION ............................................................................................ 6

C.   STATEMENT OF THE ISSUES ........................................................................... 7

D.   EVIDENCE .................................................................................................... 8

E.   STATEMENT OF FACTS ................................................................................. 10

F.   SUMMARY OF THE ARGUMENT ..................................................................... 11

G.   ARGUMENTS & AUTHORITIES ...................................................................... 12

   1.   THE COMMUNICATIONS ACT ..................................................................... 12
   2.   STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II) ........................ 15
   3.   DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii) .................. 20

F.   ATTORNEY'S FEES AND COSTS ..................................................................... 23

G.   CONCLUSION .............................................................................................. 23

H.   PRAYER ..................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986) ..................................................................................................... 18

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991) .................................................................................................................................... 17

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990)......................................................................................... 15, 22

*Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983)......... 19

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002).................................................................................................... 17

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952) ............. 15, 16

*Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) ..................................................... 14

*Joe Hand Promotions, Inc. v. Macias,* No. 4:11-cv-01773 (S.D. Tex. March 19, 2012)(Memorandum and Order)(Atlas, J.) ..................................................... 13

*Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001)(Nathaniel, J.) ......................................................... 20

*Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018) ............................................................................................................... 13

*KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001) ..................................................................................................... 21

*KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) .... 13

*KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001)(Briones, D.) ........................................... 21

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981) ................................................................................................................. 15, 22

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978) ........................................................................................................................ 15

*ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985) ..................................... 20

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986) 19

*Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) ............................................................................................................... 14

*TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) .................................. 20

*U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992) ............................................. 12, 14

## Statutes

17 U.S.C. § 101, et seq. .............................................................................................. 16, 17

47 U.S.C. § 553 ................................................................................................. 5, 11, 12, 14

47 U.S.C. § 605 ............................................................................................. 5, 6, 7, 11, 12

47 U.S.C. § 605(e)(3)(B)(iii) ............................................................................................. 23

47 U.S.C. § 605(e)(3)(C)(i)(II) ................................................................................... 15, 24

47 U.S.C. § 605(e)(3)(C)(ii) ....................................................................................... 20, 24

47 U.S.C. § 605(e)(4) ........................................................................................................ 12

Federal Communications Act of 1934 ............................... 5, 6, 8, 11, 12, 14, 15, 16, 22, 23

4

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

Plaintiff, Joe Hand Promotions, Inc. ("Plaintiff" or "JHP"), by and through its attorney, moves for a final default judgment against Defendant, Ruben Lua, a/k/a Ruben Lua-Ayala, d/b/a Habanero Mexican Grill, and d/b/a Habanero Mexican Grill & Paleteria ("Defendant") and files this its Motion for Final Default Judgment and Supporting Brief ("Motion"), which is supported by the following brief and the attached evidence.

### A. NATURE AND STAGE OF THE PROCEEDING

1.     On January 7, 2021, Plaintiff sued Defendant complaining of the unauthorized and illegal interception and/or receipt and exhibition of the *Ultimate Fighting Championship® 229: Khabib vs. McGregor* broadcast, including all undercard bouts and the main prizefight, broadcasted on October 6, 2018 ("Program") at the establishment known as Habanero Mexican Grill/Habanero Mexican Grill & Paleteria located at 14520 Memorial Dr., #112, Houston, Texas 77079 ("Establishment"), a commercial business, without paying the sublicense fee to Plaintiff.  *See* Doc. #1.

2.     On May 5, 2021, Plaintiff filed its Request to Enter Default against Defendant, which request is pending. *See* Doc. #13.

3.     JHP hereby seeks the entry of a final default judgment against Defendant for statutory damages under the Federal Communications Act of 1934, as amended.  In its Complaint, Plaintiff asserted piracy claims under the Federal Communications Act of 1934, as amended, 47 U.S.C. 605 et seq. or, alternatively, 47 U.S.C. § 553, et seq.  In this Motion,

Plaintiff moves for final default judgment solely under Title 47 U.S.C. § 605.

## B. INTRODUCTION

4.     Plaintiff is a commercial licensor of sports and entertainment programming to commercial establishments (i.e., casinos, racetracks, bars, restaurants, and nightclubs). *See* Exhibit B at ¶ 4 and Exhibit B(1).  By contract, Plaintiff was granted an exclusive commercial license to distribute and authorize the public display of the broadcast of the Program. *See Id.* Plaintiff entered into agreements with commercial establishments allowing them to legally exhibit the Program to patrons in their establishments. *See* Exhibit B at ¶¶ 4, 8 and Exhibit B(1).

5.     On the date of the Program, Defendant conducted business as Habanero Mexican Grill/Habanero Mexican Grill & Paleteria and owned, operated, maintained, and controlled the Establishment. *See* Doc. #1 at ¶ 2 and Exhibit A.

6.     Rather than purchase the proper commercial rights to the Program from Plaintiff, Defendant or his agents, servants, and/or employees illegally intercepted and/or received and exhibited the Program in the Establishment without authorization from or payment to Plaintiff.  *See* Exhibit B at ¶¶ 8-9, 12, Exhibits B(1)-B(3), Exhibit C, Exhibits C(1)-C(2), and Exhibit C(5).   Defendant's actions constitute a violation of the Communications Act.

7.     Defendant's violation was committed willfully and for the purpose of direct or indirect commercial advantage or private financial gain as the Establishment was open for business, offered food and/or drink for purchase, and the broadcast of the Program was advertised on social media and the internet.  *See* Exhibit A, Exhibit B at ¶¶ 8-13, Exhibit B(3), Exhibit C, Exhibits C(1)-C(2), and Exhibit C(5).

8.     As further evidence of Defendant's willful violation, Plaintiff presents the Court with evidence from social media as to other proprietary programming of which Plaintiff did not authorize the broadcast at the Establishment as follows:

- *Ultimate Fighting Championship® 230: Cormier vs. Lewis* mixed martial arts match, including all undercard bouts and commentary, broadcast on November 3, 2018 (*See* Exhibit B(1) attached to this declaration); and

- *Deontay Wilder vs. Tyson Fury* boxing match, including all undercard bouts and commentary, broadcast on December 1, 2018.

*See* Exhibit B at ¶ 12, Exhibit B(1), Exhibit C, Exhibits C(3)-C(4).

9.     In this Motion, Plaintiff seeks the entry of a final default judgment against Defendant including: (a) damages provided by Title 47 U.S.C. § 605 et seq. in the amount of $40,000.00, (b) costs, attorney's fees and expenses, and (c) such other and further relief to which Plaintiff is entitled.

## C.  STATEMENT OF THE ISSUES

- Whether Defendant violated Title 47 U.S.C. § 605 by exhibiting the Program at the Establishment without payment to or authorization from Plaintiff.

- Whether Defendant's unauthorized exhibition of the Program was willful and for the purposes of direct or indirect commercial advantage or private financial gain.

- Whether $40,000.00 is the appropriate amount of statutory damages for Defendant's willful violation of the Communications Act.

- Whether Plaintiff is entitled to an award of its attorney's fees and costs.

### D. EVIDENCE

10.     In addition to the admitted-through-default allegations in Plaintiff's Complaint [*See* Doc. #1], Plaintiff provides the following evidence:

Exhibit A:  Attached as **Exhibit A** is (1) a true and correct copy of the Texas Limited Sales, Excise, and Use Tax Permit inquiry (taxpayer number redacted) from the Texas Comptroller of Public Accounts, (2) a certified copy of the Assumed Name Filing by Jose R. Lua Ayala and Ruben Lua-Ayala for the Establishment, and (3) a certified copy of the Withdrawal Notice of Jose R. Lua Ayala of his interest in the Establishment filed on March 10, 2017.

Exhibit B: Attached as **Exhibit B** is the Declaration of Joe Hand, Jr., President of Plaintiff, forming the basis for an award of statutory damages under the Communications Act.   Additionally, the Declaration includes the following exhibits:

1. A true and correct copy of the Commercial Licensing Agreement (redacted) for the Program, providing Plaintiff with the exclusive right to sublicense the exhibition of the Program to commercial establishments such as Defendant's Establishment, attached as **Exhibit B(1)**;

2. A true and correct copy of the Rate Card for the Program, attached as **Exhibit B(2)**; and

8

3. A true and correct copy of the UFC Piracy Affidavit of Juan Castillo ("Plaintiff's Auditor"), an eye-witness, who entered the Establishment on the night of the Program and observed the Program being exhibited on multiple televisions to approximately 28 people along with photographs and videos, attached as **Exhibit B(3)**.

Exhibit C: Attached as **Exhibit C** is the Declaration of Ryan R. Janis. Additionally, the declaration includes the following exhibits:

1. A screen shot from www.eventbrite.com for the exhibition of the Program at the Establishment, attached as **Exhibit C(1)**;

2. Screen shots from Facebook, namely the Facebook Page with username "Habanero Mexican Grill," advertising the upcoming exhibition of the Program and thanking those who watched the Program at the Establishment, attached as **Exhibit C(2)**;

3. A screen shot from Facebook, namely the Facebook Page with username "Habanero Mexican Grill," advertising the upcoming exhibition of the *Ultimate Fighting Championship® 230: Cormier vs. Lewis* on November 3, 2018, attached as **Exhibit C(3)**;

4. A screen shot from Facebook, namely the Facebook Page with username "Habanero Mexican Grill," advertising the upcoming exhibition of the *Wilder vs. Fury* boxing match on December 1, 2018, attached as **Exhibit C(4)**;

5. A video from Facebook, namely the Facebook Page with the username "Habanero Mexican Grill," showing customers watching the Program at the Establishment, attached as **Exhibit C(5)**.

Exhibit D:  Attached as **Exhibit D** is the Affidavit for Attorney's Fees and Costs. Additionally, the Affidavit includes the following exhibit:

1. A true and correct copy of the service of process invoice, attached as **Exhibit D(1)**.

## E.  STATEMENT OF FACTS

11.     Pursuant to Plaintiff's Complaint and the evidence presented, the following facts are established:

a.  Defendant conducted business as Habanero Mexican Grill/Habanero Mexican Grill & Paleteria and owned, operated, maintained, and controlled the Establishment on the date of the Program. *See* Doc. #1 at ¶ 2 and Exhibit A.

b.  Plaintiff is in the business of marketing and sublicensing commercial exhibitions of pay-per-view prizefight events. *See* Exhibit B at ¶ 4.

c.  Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the Program. *See Id.* and Exhibit B(1).

d.  Through an agreement with the promotor of the Program, Plaintiff was licensed to exhibit the Program at commercial locations such as bars, nightclubs, restaurants, and other commercial establishments throughout the State of Texas. *See* Plaintiff's Complaint, Doc. #1 at ¶¶ 6-9, Exhibit B at ¶ 4, and Exhibit B(1).

e.  In Texas, the Program was legally available to commercial establishments such as the Establishment only through an agreement with Plaintiff. *See* Exhibit B at ¶ 4 and Exhibit B(1).

f.  In order to safeguard against the unauthorized interception and/or receipt of the Program, the interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public. If a commercial establishment was authorized by Plaintiff to receive the Program, Plaintiff authorized the receipt of the signal(s) or authorized the establishment's cable or satellite provider to release the Program to the establishment, depending upon the establishment's equipment and provider. *See* Exhibit B at ¶¶ 5-6, 8, 10-11.

g.  Plaintiff did not notify the Establishment's cable or satellite provider to unblock the Establishment's account or to release the Program to the Establishment to allow the Establishment to receive and broadcast the Program to its patrons. Plaintiff did not authorize the Establishment to receive and exhibit the Program to its patrons.  *See* Exhibit B at ¶ 12.

h. Authorized commercial establishments that contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Program. This sublicense fee is based on the occupancy/capacity of the establishment. Here, the Establishment had an approximate occupancy/capacity of 200 people. According to the Rate Card, the fee for a legal broadcast would have been $1,680.00. In this case, the commercial sublicense fee to broadcast the Program was not paid. *See* Exhibit B at ¶ 8, Exhibit B(2), and Exhibit B(3).

i. On the night of the Program, Plaintiff's Auditor, an eye-witness, entered the Habaneros Mexican Grill & Paleteria establishment located at 14520 Memorial Dr., #112, Houston, Texas on October 6, 2018 and observed the Program being broadcast on multiple televisions, counting approximately 28 people in the Establishment at that time. *See* Exhibit B at ¶ 9 and Exhibit B(3).

j. Joe Hand, Jr., Plaintiff's President, believes that Plaintiff's programming was not and cannot be mistakenly, innocently, or accidentally intercepted in the Houston, Texas area. Accordingly, Defendant could not have obtained the transmission of the Program had Defendant not undertaken specific wrongful actions to intercept and/or receive and exhibit the telecast of the Program. *See* Exhibit B at ¶¶ 10-13.

k. The broadcast of the Program was advertised on the internet and social media. *See* Exhibit C, Exhibits C(1)-C(2).

## F.  SUMMARY OF THE ARGUMENT

12.    Plaintiff pled piracy claims against Defendant under the Federal Communications Act of 1934, as amended (the "Communications Act").    The Communications Act protects against the piracy of radio and television signals. *See* 47 U.S.C. §§ 553 and 605.

13.    Plaintiff seeks damages under the Communications Act, 47 U.S.C. § 605. 47 U.S.C. § 605 provides:

. . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

14.     "In general, 'piracy' refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming." *U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992)(reviewing the legislative history of § 605(e)(4)).

15.     By virtue of his default, Defendant admitted to committing piracy against Plaintiff.

16.     By this Motion, Plaintiff seeks the entry of a final default judgment against Defendant for $40,000.00 in statutory damages for his willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees.

## G. ARGUMENTS & AUTHORITIES

### 1. THE COMMUNICATIONS ACT

17.     The unauthorized interception and broadcast of cable or satellite transmissions violates 47 U.S.C. §§ 553 or 605. Accordingly, unlawful interception and/or receipt and broadcast of the signal of the Program are violations of the Communications Act.

12

18.    "The FCA [Federal Communication Act] is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *See Joe Hand Promotions, Inc. v. Macias,* No. 4:11-cv-01773 (S.D. Tex. March 19, 2012)(Memorandum and Order)(Atlas, J.)(referencing *KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)(the finding that bar had, without authorization, shown a preliminary bout required judgment in favor of the plaintiff)).

19.    On the date of the Program, Defendant conducted business as Habanero Mexican Grill/Habanero Mexican Grill & Paleteria and owned, operated, maintained, and controlled the Establishment; the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive holder of the commercial license to distribute and authorize such exhibition.  *See* Doc. #1 at ¶¶ 1-2, 6-14, 16, 18, Exhibit A, Exhibit B at ¶¶ 4-12, Exhibit B(1), Exhibit B(3), Exhibit C, Exhibits C(1)-C(2), and Exhibit C(5).

20.    In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action such as employing residential cable and satellite equipment to circumvent commercial licensing requirements or engaging in similar illegal conduct to steal programming through internet streaming for residential/non-commercial use only. *See* Exhibit B at ¶¶ 10-13; *Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018)("exhibitions of

television programs broadcasted via the internet could serve as a basis for liability under Section 553 and 605"); *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999)(when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

21.     Defendant's default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)(citations omitted).

22.     Given the above, it is clear that Plaintiff has met its burden with respect to liability in this matter.   Plaintiff submits evidence to support damages under the Communications Act, specifically seeking damages under 47 U.S.C. § 605.

23.     In 1988, in an effort to further deter piracy, Congress amended the Communications Act to provide for more severe penalties for violations.   "The Committee wants to give both prosecutors and civil plaintiffs the legal tools they need to bring piracy under control. The Committee commends and encourages inter-industry efforts to deal with piracy, and believes the new remedies and increased penalties adopted through this provision will contribute to these important efforts."   *See U.S. v. Scott*, 783 F. Supp. 280, 282 (N.D.Miss. 1992)(citing 1988 *U.S. Code Cong. & Admin. News* 5577, 5657-58).

14

**2.    STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)**

24.    As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).   *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).  It is in the Plaintiff's discretion whether to elect to receive actual or statutory damages. *Id.*

25.    Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II).  For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendant in the amount of $10,000.00 for Defendant's violation of the Communications Act.

26.    Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

27.    As stated above, and supported by the attached evidence, on the date of the Program, Defendant, himself and/or through his agents, servants, and/or employees, intercepted and/or received or assisted in the interception and/or receipt of the live telecast

15

of the Program, broadcasted or assisted in the broadcast of the Program to the patrons at Defendant's Establishment, and broadcasted the Program to the patrons at Defendant's Establishment without paying any sublicense fees to Plaintiff. *See* Doc. #1 at ¶¶ 1-2, 6-14, 16, 18, Exhibit A, Exhibit B, and Exhibits B(1)-B(3). The willfulness of Defendant's violation is also shown by the advertisement of the broadcast of the Program on the internet and social media.   *See* Exhibit C, Exhibits C(1)-C(2), and Exhibit C(5).

28.     In the instant case, as more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff because of Defendant's unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

29.     Because the statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. (the "Copyright Act") is analogous to the Communications Act, its case law is influential in analyzing the amount of statutory damages to which Plaintiff is entitled.

30.     According to the Supreme Court of the United States, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider. *Woolworth*, 344 U.S. at 233. Rather, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long

experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id.*

31.     Applying the courts' analysis from their decisions under the Copyright Act, the lost income from the sale of the Program to Defendant's Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendant's wrongful acts. *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc*., 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.")(citations omitted). Factors to consider in determining a statutory damage award include: (1) the "fair market value of the rights infringed," (2) the "revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringer's state of mind" and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991).  For an establishment with a capacity of 200 people, the sublicense fee would have been $1,680.00.  *See* Exhibit B at ¶ 8, Exhibit B(2), and Exhibit B(3).

32.     Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program to Defendant's Establishment and its patrons as well as the value of "business investment, business opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Program to Defendant's Establishment and its patrons.  *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986).

33.     Types of damages suffered by Plaintiff and factors related to same include the following:

   a.  Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments, which steal sports and other closed-circuit programming.

   b.  Because some unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract fewer paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons, and/or incur financial loss.

   c.  When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, Plaintiff and the authorized commercial establishments suffer additional losses.

d. Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments such as Defendant's Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

*See* Exhibit B at ¶¶ 5, 13-15.

34.     Each visitor of Defendant's Establishment is lost as a future patron of authorized broadcasts. *See Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983).  Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to control and receive payment for the transmission, because patrons viewing the pirated program at Defendant's Establishment would have become patrons of an authorized establishment thereby increasing the value of the Program and Plaintiff's business opportunities.  *See* Exhibit B at ¶¶ 5, 13-15; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986).

35.     The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Program. *See* Exhibit B at ¶¶ 5, 13-15.  If such programming is made available to the public for no fee at unauthorized commercial establishments, which have not purchased the right to broadcast such programming, commercial establishments will find no reason to purchase the right to legally broadcast this type of programming. *See Id.*

36.     Given the benefits which Defendant received from the broadcast of the Program (the revenue from sales during the Program and establishing goodwill by providing access to the Program) and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendant and award to Plaintiff statutory damages in the amount of $10,000.00.

### 3.     DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

37.     Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) in light of Defendant's actions being willful and "for purposes of direct or indirect commercial advantage or private financial gain." In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the statute as a "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

38.     Defendant specifically and willfully acted to illegally intercept the transmissions of the Program for Defendant's commercial advantage, because Defendant could not have "innocently" accessed the broadcast of the Program.  *See* Exhibit B at ¶¶ 10-13; *Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001)(Nathaniel, J.)("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial

establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.")(emphasis added).

39.     Defendant knew or should have known that it was wrong to receive, intercept, and divert the scrambled signal of the Program and to broadcast it in Defendant's commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001); *see also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001)(Briones, D.)("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.")(emphasis added).

40.     Defendant's purpose and intent in exhibiting the Program was to secure a private financial gain and direct commercial advantage as shown in the following evidence:

a.     The Establishment is a business that sold food and/or drinks on the date of the Program.  *See* Exhibit A, Exhibit B(3), Exhibit C, and Exhibit C(5).

b.     The broadcast of the Program at the Establishment was advertised on the internet and on social media.  *See* Exhibit C and Exhibits C(1)-C(2).

c.    Patrons who entered the commercial Establishment viewed the pirated Program on multiple televisions. *See* Exhibit B at ¶ 9 and Exhibit B(3).

d.    The Establishment is not located in a rural area, but is located in Houston, Texas where a large number of patrons can be drawn into Defendant's Establishment to view the unauthorized broadcast of the Program.  *See* Exhibit A, Exhibit B at ¶¶ 9, 13-16, and Exhibit B(3).

e.    Plaintiff submits advertisements on social media of the *Ultimate Fighting Championship® 230: Cormier vs. Lewis* telecast on November 3, 2018 and *Deontay Wilder vs. Tyson Fury* telecast on December 1, 2018, both proprietary programming of Plaintiff.  The Establishment was not authorized to exhibit the above programming.  *See* Exhibit B at ¶ 12, Exhibit C, and Exhibits C(3)-C(4).

41.    Given the above, Defendant's actions were clearly willful and for a commercial advantage warranting additional damages under the Communications Act.

42.    Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize Defendant for willful acts. *See* e.g., *Lauratex*, 519 F. Supp. at 733 (increase of seven times the actual damages for willful acts); *Cable/Home*, 902 F.2d 829 (additional damages of five times actual damages for willful conduct); and *Entertainment by J&J, Inc.*, 219 F. Supp.2d at 777 (S.D. Tex. 2002)(the court awarded three times statutory damages for willful violations). Therefore, pursuant to Section 605(e)(3)(C)(ii), in addition to the reasons set forth above, the minimum amount of Thirty Thousand Dollars ($30,000.00)(or three times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff.

## F.  ATTORNEY'S FEES AND COSTS

43.     Plaintiff requests an award of attorney's fees and costs pursuant to Section 605(e)(3)(B)(iii).    Under Section 605(e)(3)(B)(iii), the award of attorney's fees is mandatory.  According to Section 605(e)(3)(B)(iii), "[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys' fees..."

44.     Plaintiff seeks an attorney's fees award for the prosecution of this action through the final default judgment requested and for future work on this case to collect any judgment as well as fees for any post-judgment, pre-appeal motions, and for any appeal. *See* Exhibit D.  In addition, Plaintiff seeks an award of costs, which costs have been proven by affidavit with the attached service of process invoice.  *See* Exhibit D at ¶ 8 and Exhibit D(1).

## G.  CONCLUSION

45.     In conclusion, the averments that Defendant, willfully and for purposes of direct or indirect commercial advantage or private financial gain, illegally intercepted and/or received the broadcast of the Program, and that Defendant exhibited the Program in his commercial Establishment without authorization and without paying the sublicensing fee to Plaintiff are deemed admitted and supported by evidence. Accordingly, pursuant to the Communications Act and the statutory damages permitted thereunder, Plaintiff seeks the entry of a final default judgment in favor of Plaintiff and against Defendant for the relief sought in this Motion.

## H.  PRAYER

WHEREFORE, Plaintiff respectfully requests that the Court sign and cause to be entered a final default judgment in favor of Plaintiff and against Defendant awarding Plaintiff,

(1)     Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendant in the amount of $10,000.00; and

(2)     Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendant in the amount of $30,000.00; and

(3)     Attorney's fees from Defendant in the amount of the hourly time presented in the Affidavit for Attorney's Fees and Costs (for prosecution of this case through the final default judgment); along with attorney's fees for post-trial or appellate services; and

(4)     Costs from Defendant in the amount of $497.00; and

(5)     Post-judgment interest at the highest lawful rate; and

(6)     Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

## CERTIFICATE OF COMPLIANCE

This Motion complies with Section 18c. of the Court Procedures of the Hon. Charles R. Eskridge III, because it contains 4,864 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates, as determined by the word-count function of Microsoft Word 2019.

*/s/ Jamie King*
Jamie King

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 16th day of September, 2021, a true

and correct copy of the foregoing was served as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon:*

Ruben Lua,
a/k/a Ruben Lua-Ayala,
d/b/a Habanero Mexican Grill, and
d/b/a Habanero Mexican Grill & Paleteria
9231 Cobbleshire Drive
Houston, Texas 77037

*/s/ Jamie King*                              9/16/2021
Jamie King                                        Date

26